UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONELIO LEONEL MENDEZ LOPEZ,<br>Petitioner,<br>v.<br>WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY,<br>Respondent. | Case No. 1:26-cv-7423-JDP<br><br>ORDER |

Petitioner entered the United States in May 2021 as an unaccompanied minor and was released into the United States by immigration authorities. ICE re-detained him on July 20, 2026, after an arrest for which charges were never filed. Respondent has held petitioner without a bond hearing since that date. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241. Respondent counters that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). For the following reasons, the court grants the petition for writ of habeas corpus and orders petitioner immediately released.

**Background**

On May 10, 2021, petitioner entered the United States at the age of fifteen as an unaccompanied minor without inspection. ECF No. 9 at 9, 11-12. Immigration authorities arrested him. *Id.* at 11-12. The Department of Homeland Security ("DHS") issued him a notice

to appear ("NTA") and released him into the United States through the Office of Refugee Resettlement to reunite with his aunt in Florida. *Id*. at 9; ECF No. 1 at 12. DHS never filed the first NTA with the immigration court. ECF No. 9 at 9.

On July 19, 2026, police officers arrested petitioner for the crimes of battery and burglary with assault or battery. ECF No. 9 at 10, 19-20. The next day, ICE encountered him at the local jail and re-detained him upon his release from criminal custody. *Id.* at 9. On August 10, 2026, the state prosecutor filed a "no information" with the court, thereby terminating the state case without filing charges. ECF No. 17-1 at 2-3. ICE mailed petitioner a NTA on August 18, 2026, however the NTA does not mention the July 19, 2026 arrest or charge any criminal ground of inadmissibility or detention. ECF No. 9 at 9, 22-24. Petitioner has not received a bond hearing. *Id.* at 1.

**Procedural History**

On September 14, 2026, petitioner filed a pro se petition for writ of habeas corpus and a motion for temporary restraining order. ECF Nos. 1 & 2. On September 15, 2026, the court ordered respondent to answer the petition. ECF No. 6. Respondent moved to dismiss the petition on September 17, 2026. ECF No. 9. On September 21, 2026, the court appointed counsel for petitioner. ECF No. 10. Both parties consented to the jurisdiction of the magistrate judge, ECF Nos. 8 & 15, and the court reassigned the matter to the undersigned on September 29, 2026, ECF No. 16. On October 6, 2026, petitioner, through appointed counsel, filed a reply. ECF No. 17.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have

been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1226(c)(1)(E), the Laken Riley Act. ECF No. 9 at 2. Under section 1226(c)(1)(E), the attorney general "shall take into custody" any noncitizen who "is arrested for . . . burglary. . . ." 8 U.S.C. § 1226(c)(1)(E)(ii). Petitioner was arrested for burglary on July 19, 2026. ECF No. 9 at 19. Respondent argues that section 1226(c) mandates the detention of anyone who is arrested for burglary. *Id.* at 6. Respondent also argues that to the extent that petitioner seeks to challenge his mandatory detention, his recourse is to request a hearing under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). Respondent does not address petitioner's due process argument except through the lens of its statutory analysis.

On August 10, 2026, the state prosecutor filed a "no information" statement and formally closed the state case without charging petitioner. *See* ECF No. 17 at 10. Courts have held that while an arrest for certain crimes subjects an individual to mandatory detention under 8 U.S.C. § 1226(c), such detention becomes unconstitutional after prosecutors decline to bring charges stemming from the arrest. *See E.C. v. Noem*, No. 2:25-cv-1789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) ("And if § 1226(c) mandates [p]etitioner's detention, with no regard for the fact that he was acquitted of all criminal charges through the procedural protections provided in the underlying criminal proceedings, that provision would be unconstitutional as applied to [p]etitioner."); *Singh v. Chestnut*, No. 1:26-cv-0546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("As [p]etitioner notes, however, requiring mandatory detention because of a mere arrest for which prosecutors concluded they did not have sufficient evidence to charge [p]etitioner with a crime, raises serious due process concerns. []To avoid those concerns, courts have construed the Laken Riley Act to apply only where an individual is *currently* charged with or arrested for the enumerated crimes, and concluding mandatory detention is not required when charges are never filed, *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025), or where an individual has been acquitted, *E.C. v.*

*Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025).").

Further, the NTA—which issued after the state case was terminated without the filing of charges—does not charge petitioner with a Laken Riley Act predicate. ECF No. 9 at 22. Rather, petitioner is charged with being an "alien present without admission or parole" under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*

The NTA must specify "[t]he nature of the proceedings against the [noncitizen]," "the legal authority under which the proceedings are conducted," and "the acts of conduct alleged to be in violation of the law." 8 U.S.C. § 1229(a)(1). In *In re Kotliar*, 24 I&N Dec. 124 (March 21, 2007), the BIA emphasized the importance of including in the NTA any ground for removal that "subjects [a noncitizen] to mandatory detention." *Id.* at 127. This is because the "charging document serves as notice to the alien of the circumstances relied on by the DHS to detain him."[1] *Id.*; *see also Colmenares-Pinto v. Warden of the Golden State Annex ICE Det. Fac.*, No. 1:26-cv-0812-DAD-SCR, 2026 WL 923804, at *5 (E.D. Cal. Apr. 3, 2026) ("The plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered under 8 U.S.C. § 1182(a)(2) as a prerequisite to mandatory detention under that provision."), *report and recommendation adopted*, 2026 WL 1430913 (E.D. Cal. May 21, 2026); *Miao v. Chestnut*, No. 1:26-cv-1271-KES-SKO, 2026 WL 947020, at *3 (E.D. Cal. April 8, 2026) (rejecting the respondent's mandatory detention argument because grounds were not charged in NTA). For these reasons, the court finds that petitioner is not lawfully detained under section 1226(c) and his detention is not mandated by that statute.

Thus, the court finds that petitioner's detention should have been governed by section 1226(a) and not, as respondent argues, by section 1226(c).[2] *See Escobar Salgado v. Mattos*, 809

[1] The fact that ICE did not administratively charge petitioner with a predicate for mandatory detention under 8 U.S.C. § 1226(c) undermines respondent's argument that petitioner should have requested a *Matter of Joseph* hearing. The government did not put petitioner on notice that it considered him subject to mandatory detention under section 1226(c) until its motion to dismiss, ECF No. 9, filed several months after his re-detention. *See Julio Cesar v. Chestnut, et al.,* No. 1:26-cv-04775-MWJS, 2026 WL 2139762 (E.D. Cal. July 24, 2026) (waiving exhaustion requirement when immigration authorities did not classify petitioner subject to section 1226(c)).

[2] ICE may have originally detained petitioner under section 1225(b) in light of the NTA's

F. Supp. 3d 1123, 1136 (D. Nev. 2025) (noting that section 1226 continues to "authorize discretionary detention of noncitizens charged with being inadmissible who do not fall into those enumerated exceptions"). However, petitioner raises a due process argument that his re-detention without a pre-deprivation hearing has violated his constitutional rights. ECF No. 1 at 25-26.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The court considers each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, 818 F. Supp. 3d 1113, 1120 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner is no different. Immigration authorities released him into the United States in May 2021. ECF No. 9 at 9, 12. Petitioner lived in the United States for over five years before his re-detention by ICE on July 20, 2026. *Id*. at 9.

Petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2

---

charge of inadmissibility, the lack of a warrant for his arrest (as required for arrests under section 1226(a), and the lack of compliance with 8 C.F.R. § 287.3 for arrests without a warrant. Respondent states in the motion to dismiss that it would address the "detention authority relied upon at the time of detention following the argument and analysis in this brief," but it has not done so. *See* ECF No. 9 at 1. To the extent that the section 1226(c) argument is a *post hoc* rationalization, it is an insufficient basis for detention. *See Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3360-DAD-CKD, 2026 WL 2389805 (E.D. Cal. Aug. 17, 2026) (collecting cases rejecting post hoc rationalizations for immigration detention authority).

(E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, the court must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during over five years of release in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov.

22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention without a bond hearing indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. *See* ECF No. 9. In these circumstances, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondent has provided no information about the additional burden that would fall on it as a result of being required to provide a bond hearing. *See* ECF No. 9. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, the court must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 30. Respondent does not address this issue. *See* ECF No. 9.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

In a similar situation, where the government has erroneously determined that a petitioner is subject to mandatory detention under section 1225(b), courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, the "typical remedy" of release is appropriate because the government has not provided a lawful justification for petitioner's mandatory detention. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the provision of a bond hearing after months in custody is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1.

Respondent has not provided any evidence or argument suggesting that petitioner is a danger to the community or a flight risk. *See* ECF No. 9. Petitioner's rap sheet makes it clear that, but for the arrest in July, for which a prosecutor elected not to file charges, he has been in this country for five years without any contact with the criminal justice system. ECF No. 9 at 15-20. Moreover, respondent "cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating [p]etitioner's due process rights." *See Pineda v. Chestnut*, No. 1:25-cv-1970-DC-JDP, 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)).

Under these circumstances, the "typical remedy" of release is appropriate. *See Munaf*, 553 U.S. at 693.

**Conclusion**

Accordingly, it is hereby ORDERED that:

1. The petition for writ of habeas corpus, ECF No. 1, is GRANTED;

2. Respondent's motion to dismiss, ECF No. 9, is DENIED;

3. Respondent must immediately release petitioner (A-Number: 220-188-006) from its custody on the same conditions, if any, as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal. Respondent must release petitioner with all the documents and property that were taken from him at the time of his re-detention;

4. The Clerk of Court is directed to serve Central Valley Annex Detention Facility with a copy of this order;

5. Respondent must file a status report within seven days notifying the court of its compliance with this order; and

6. The Clerk of Court is ordered to enter judgment accordingly and close this case.

IT IS SO ORDERED.

Dated: October 9, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE